IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KENNETH HOWARD, #1274757 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv57 |
| CLYDE D. BAIRFIELD, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Kenneth Howard, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The complaint was filed on February 19, 2008. The Plaintiff complained about a use of force incident that occurred on October 31, 2007. He alleged that force was used as an act of retaliation. He also complained that he was denied medical care following the incident. On July 21, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Coordinator Chip

Satterwhite, Warden Eddie Baker and Nurse Barbara Hughes were present during the hearing in the event the Court wanted testimony about information contained in the Plaintiff's records or practices in the prison system.

The Plaintiff testified that the use of force incident occurred in the A-Side Gym at the Coffield Unit on October 31, 2007. A few days earlier, the Plaintiff wrote a grievance against Sgt. Ham, Lt. Scarborough, Sgt. Holley, and Officer Hayes for bringing tobacco products on government property. While the Plaintiff was sitting on the gym floor, Officer Bairfield called out his name and told him to raise his hand. The Plaintiff thought the officers were conducting a recount. He raised his hand and called out his housing number. Officer Bairfield walked up and asked for the Plaintiff's identification card. He wrote down the Plaintiff's name and prisoner number and threw the card back at the Plaintiff. The Plaintiff noted that the card almost struck him in the face. He asked Officer Bairfield why he was treating him in such a manner, but Officer Bairfield responded with abusive language. Officer Bairfield told the Plaintiff to stand up while he placed handcuffs on him. The Plaintiff said he could not leave the field squad without permission of his supervisor. Officer Hayes, his supervisor, then ordered him to get up.

Officer Bairfield placed handcuffs on the Plaintiff and told Officer Hayes that he was taking the Plaintiff outside. Officer Bairfield twisted the Plaintiff's arm and pushed him outside the gym. All of the other guards and inmates watched. The Plaintiff stated that Lt. Scarborough, Sgt. Ham and Sgt. Holley were waiting for him outside. Officer Bairfield then slammed the Plaintiff against the gym door with such force that it cause excruciating pain. Sgt. Holley came up from behind and slammed his elbows into the Plaintiff's neck so hard that his neck popped. Sgt. Holley placed such force on the Plaintiff's neck that it made it difficult for him to breathe. Officer Bairfield also

slammed his elbows into the Plaintiff's back area and then kneed him hard in the back of his thigh. Sgt. Ham came up behind him and repeatedly pushed him hard against the gym door while saying, "you can't say that a field officer is wrong for pulling you out." Captain Taliaferro walked up and asked what was going on. Officer Bairfield initially said that the Plaintiff had disobeyed orders to be quiet in the hallway. He subsequently added, "that's the little punk bitch that wrote that grievance."

Sgt. Holley and Officer Graham escorted the Plaintiff back to his cell. They refused to take him to the infirmary even though he complained about aches and pains in his head, back, neck and thigh areas. They responded by telling him that nothing was wrong with him and to turn in a sick call request.

The Plaintiff was asked why he was suing the various people named as defendants. He testified that he sued Warden Thompson because he is the head supervisor and has the responsibility to make his officers follow procedures. He asserted that Warden Thompson did not do his job. Moreover, his family subsequently informed Warden Thompson and Warden Swift about the incident. His mother told Warden Swift that there should be an investigation. An investigation was conducted by the Office of the Inspector General. The Plaintiff received two polygraphs that indicated that he was telling the truth. The officers refused to take polygraphs. The Office of the Inspector General refused to pursue the matter further because it was his word against the word of six officers. The Plaintiff testified that he sued Warden Thompson and Warden Swift because they did not investigate the matter to his satisfaction.

The Plaintiff testified that he sued Lt. Scarborough because he was the supervisor on duty throughout the use of force incident. He watched the incident and did not do anything to stop it. The

Plaintiff testified that Lt. Scarborough should have taken steps to stop the assault. It is again noted that Lt. Scarborough was one of the officers who was the object of the grievance filed previously.

The Plaintiff sued Sgt. Holley for placing his elbows in his neck so hard that it popped. He also refused to take the Plaintiff to the infirmary. Sgt. Holley was also one of the officers who was the object of the previously filed grievance.

The Plaintiff testified that he sued Sgt. Ham for pushing him in the back. He also told the Plaintiff that he spoke improperly to a field officer. He was also one of the officers named in the grievance filed previously.

The Plaintiff sued Officer Bairfield for using force against him. He was also the officer who told Captain Taliaferro, "that's the little punk bitch that wrote the grievance."

Officer Graham was sued because he was one of the officers that refused to take the Plaintiff to the infirmary. Officer Graham told him that nothing was wrong with him.

The Plaintiff testified that he sued Officer Hayes because he was one of the officers who had been named in the previous grievance. Hayes was present during the use of force incident.

The Plaintiff testified that he sued Captain Taliaferro because he was present throughout the incident and had the authority to stop it. When the Plaintiff asked him to fill out a witness statement on the following day, Captain Taliaferro replied that he should know better than to challenge the authority of a ranking officer.

The Plaintiff testified that he sued the John and Jane Does, who were medical personnel, for denying him medical care. He submitted a sick call about his neck. He did not receive an x-ray of his neck for about two and-one half months. His first x-ray was of his back. A second x-ray was of his neck. The x-ray showed an injury to his neck. The Plaintiff testified that he was denied

medical care. He saw a nurse on the day of the use of force incident. He asked for medical care, but she told him to submit a sick call request. She added that he did not have an emergency and that the officers would have taken him to the infirmary if he had an emergency. He saw a doctor on television, but there was interference in the reception. He also saw a medic, who gave him ibuprofen, but the medic also said his back was injured while getting on a bunk. He submitted a sick call request and asked to see a doctor, which was denied. He saw the medic again, who prescribed ibuprofen again. The Plaintiff testified that the care provided was not enough. He asked Dr. Cantu for physical therapy. She denied the request but gave him extra work restrictions.

The Plaintiff testified that his injuries were muscle spasms in the back and neck. He added that it is difficult for him to stand or lie down for an extended period of time. His neck injury was to the C4-C5 area. He testified that he never had a problem with his neck before then. He still has problems with his neck and back, particularly with spasms. He still takes Naprosyn for pain.

The Plaintiff testified that he does not know the name of the medical people who were deliberately indifferent to his serious medical needs. He reiterated that he believes that the use of force incident was retaliation for the previous grievance. He added that he received a response to the Step 1 grievance on the same day as the use of force incident. The Plaintiff added that his claims include cover-up and failure to follow proper prison procedures.

Nurse Hughes testified from the Plaintiff's medical records. She noted that the x-rays of his neck showed mild degenerative changes in his neck. The x-rays of the Plaintiff's lumbar region were normal. She noted that spasms could occur even when x-rays were normal. Nurse Hughes testified that there were no entries in his medical records on October 31, 2007. The first medical entry was dated November 3, 2007. A nurse referred him to a provider, who saw him on November 6, 2007.

The Plaintiff was examined by a doctor on television, which is referred to as Digital Medical Service ("DMS"). On November 3 and 6, the Plaintiff specified that his injuries were the product of the use of force.

The Plaintiff gave the Court permission to review his prison records, including his medical records. The radiologist had the following conclusion after reviewing the x-ray of the Plaintiff's lumbar spine: "Three view lumbar spine shows that the disc spacing and alignment of the lumbar vertebrae are well maintained with pedicles are intact." He had the following conclusion after reviewing the x-rays of the Plaintiff's cervical spine: "Three views of the cervical show that there is straightening of the cervical lordosis. There is mild posterior spondylolysis present at the C4-C5 and C5-C6 levels. There are mild degenerative changes seen at the uncovertebral articulations. Impression: Mild degenerative changes in the mid cervical spine as noted above."

Discussion and Analysis

As an initial matter, the Court notes that the Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). The Plaintiff's complaints about violations of prison regulations, without more, do not state a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).

The first constitutional violation alleged by the Plaintiff involved excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the

need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). *See also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). On the other hand, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

In the present case, the Plaintiff has shown that various Defendants used force against him and that such force arguably was not for a legitimate reason. Such force allegedly was not applied in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm in response to his grievance. The people who actually used force against the Plaintiff included Officer Bairfield, Sgt. Holley, and Sgt. Ham. They should be ordered to respond to the Plaintiff's excessive use of force claim.

The Plaintiff also sued the following two supervisors who were in attendance during the incident and failed to stop the use of force: Lt. Scarborough and Captain Taliaferro. Ordinarily, in order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither supervisor participated in the alleged acts of misconduct. The only way they could possibly be implicated in these claims is through their supervisory capacity.

Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). The Plaintiff's allegations against Lt. Scarborough and Captain Taliaferro arguably satisfy this requirement, thus they should also respond to the excessive use of force claim.

The Plaintiff also complained that force was used in retaliation to the grievance he wrote against Lt. Scarborough, Sgt. Holley, Sgt. Ham and Officer Hayes. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*,

188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006).

In the present case, the Plaintiff has alleged facts supporting a potentially meritorious civil rights lawsuit for retaliation against Lt. Scarborough, Sgt. Holley, Sgt. Ham and Officer Hayes. He should likewise be permitted to proceed against Officer Bairfield since he was the officer who initiated the retaliatory response.

The Plaintiff also complained that Sgt. Holley and Officer Graham refused to take him to the infirmary after the use of force incident. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

The Plaintiff has alleged facts arguably supporting a claim of deliberate indifference to his serious medical needs against Sgt. Holley and Officer Graham. They should file a response to the deliberate indifference claims.

The Plaintiff sued Wardens Thompson and Swift because they are responsible for their officers and because of their investigation. As was previously noted, in order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d at 793. Neither Warden Thompson nor Warden Swift participated in the alleged acts of misconduct. The only way they could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

The Plaintiff also testified that he was not satisfied with how the wardens investigated the matter. A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because officials failed to adhere to grievance procedures. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The failure of the wardens to resolve the investigations to the Plaintiff's satisfaction does not provide a basis for a potentially meritorious civil rights lawsuit. The claims against Wardens Thompson and Swift fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the Plaintiff sued unidentified John and Jane Does, who were medical personnel, regarding the medical care they provided him. It is again noted that medical personnel cannot be found liable unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 837. In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In the present case, medical personnel were responsive to the Plaintiff's medical needs. X-rays were made of his lumbar area, which were normal, and his neck, which showed mild degenerative changes. Naprosyn was prescribed for pain. His primary complaint was about delays, but he failed to show that delays were the product of deliberate indifference or that they resulted in substantial harm. The claims against the unnamed medical personnel fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against the John and Jane Does should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his excessive use of force claims against Officer Clyde D. Bairfield, Jr., Sgt. Scott L. Holley, Sgt. Stephen C. Ham, Lt. Billy Scarborough, and Captain Danny Taliaferro. It is further

**ORDERED** that the Plaintiff may proceed with his retaliation claims against Lt. Billy Scarborough, Sgt. Scott L. Holley, Sgt. Stephen C. Ham, Officer George W. Hayes, Jr., and Officer Clyde D. Bairfield, Jr. It is further

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claims against Sgt. Scott L. Holley and Officer Kevin R. Graham. It is finally

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**So ORDERED and SIGNED this 6th day of August, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE